IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | Case No.: 1:24-CR-00124-ACR |
| | ) | |
| BRANDON MACKIE, | ) | |
| | ) | |
| *Defendant*. | ) | |

**DEFENDANT BRANDON MACKIE'S
<u>SENTENCING MEMORANDUM</u>**

Pursuant to 18 U.S.C. §3553, Brandon Mackie, through counsel, respectfully submits this Sentencing Memorandum supporting a probationary sentence. Given Mr. Mackie's history of lawful conduct and the limited nature of his actions on January 6, 2020, a probationary sentence satisfies the factors outlined in §3553(a). His exemplary behavior during pretrial release and the absence of any evidence of organized or radicalized conduct further demonstrates his suitability for probation. Although Mr. Mackie was present at the Capitol on January 6, 2020, he is unlikely to reoffend and merits the Court's consideration of a probationary sentence.

*The Circumstances of the Offense*

On December 19, 2020, following his apparent defeat in the 2020 presidential election, then-President Donald Trump announced a "Save America" rally to protest the results. The rally, scheduled for January 6, 2021, coincided with the congressional certification of President-Elect Joe Biden as the 46th President of the United States. President Trump and his campaign promoted the rally through mainstream social media platforms such as Twitter and Facebook, as well as traditional media outlets.

1

Brandon Mackie closely followed the election through both traditional and social media. Together with his brother, Nathan Mackie, he decided to attend the rally to support President Trump and express concerns about the future of the nation under a Biden administration. The pair hastily arranged travel plans, booked an Airbnb in the Washington, D.C., area, and agreed to share costs with Daniel Hatcher, a third acquaintance and fellow Trump supporter. None of the men arrived in Washington prepared for more than a two night stay to attend a nationally advertised rally on the Ellipse.

On January 6, 2021, several speakers addressed the rally attendees before President Trump took the stage. By 12:30 p.m., even before President Trump concluded his remarks, some rally attendees began migrating toward the Capitol, encouraged by the speeches and the rally's overall tone. At about 1:00 p.m., President Trump finished speaking. By then, many rally participants had breached the Capitol's outer barriers, leaving fencing and barricades in disarray as more approached the Capitol grounds. By 2:13 p.m., the Capitol building itself was breached through a broken window near the Senate Wing Doors, prompting the evacuation of members of Congress and the Vice President.

After the rally, Mr. Mackie and his brother joined a large group walking from the Ellipse to the Capitol grounds. When they arrived, they encountered a chaotic scene. Mr. Mackie took several photographs and ascended the northwest steps to the Upper Northwest Terrace of the Capitol Building. There, the group spent approximately 30 minutes observing the situation and interacting with other rally attendees.

During this time, the group spoke with individuals exiting the Capitol through the Senate Wing Doors. These individuals claimed that Capitol Police were neither verbally nor physically

excluding protesters from the building's hallways. Mr. Mackie also encountered a woman, described as a "grandma," who said Capitol Police were allowing people into that doorway area.

At about 3:12 p.m., Mr. Mackie entered the Capitol through the same window that had been broken an hour earlier by the first wave of rioters. A man sat on the ledge of the waist-high window, calmly helping people as they entered the building. Once inside, Mr. Mackie took a photograph of Mr. Hatcher. Every moment of Mr. Mackie's time inside the Capitol was captured on a single video surveillance camera. Brandon Mackie neither touched nor damaged any property while inside the Capitol. Although the area is crowded with protesters, the surveillance video clarifies that Mr. Mackie only remained inside the building for about two minutes. Entering the window at 3:12 p.m. taking only a few steps while inside, then exiting via an immediately adjacent doorway at 3:14 p.m. There is no violence, destruction of Capitol property, or aggressive behavior by protestors or police visible on the video while Mr. Mackie remained inside. Shortly after exiting the building, Mr. Mackie left the Capitol grounds entirely.

On February 13, 2024, Mr. Mackie was arrested without incident by FBI agents at his home in Weatherford, Texas. By that time FBI agents had approached both Mr. Hatcher (on January 13, 2021, and again on January 15, 2021) and Nathan Mackie (on September 28, 2021) for interviews via telephone without making arrests of either man. No such interview was ever asked of Brandon Mackie before his arrest in February 2024.

The three men were charged via sealed criminal complaint on February 12, 2024, with four misdemeanor offenses. (*See* Doc. 1). Mr. Mackie was released the same day of his arrest and ordered to appear before Magistrate Judge Meriweather via VTC on February 27, 2024. An Information was filed on March 11, 2024. (*See* Doc. 21). After discovery was completed, Mr.

3

Mackie entered a plea of guilty to counts three and four via a plea agreement to this Court on July 1, 2024. (*See* Docs. 34 and 37). Mr. Mackie has admitted to his disorderly conduct and to parading or demonstrating inside the Capitol building on January 6, 2020, pursuant that plea agreement. *Id*.

Counsel does not and should not minimize the events that occurred on January 6, 2020. The Trump rally that turned into a riot, breaking through windows and doors at the U.S. Capitol, injuring hundreds of law enforcement officers and protestors alike, and resulting in the deaths of five individuals will forever be a stain on this Country's history. However, Mr. Mackie's role in this event did not precipitate directly or in any visible way to any physical harm to the Capitol or the people injured or killed. Respectfully, what counsel intends to describe is simply that Mr. Mackie's conduct, although an offense under the law, should not be conflated with the many other instances of criminal conduct which occurred on that day.

### *Characteristics of the Defendant*

Brandon Mackie is the devoted father of two boys. Mr. Mackie and his wife Jamie have been together for fifteen years. Their relationship is strong and centered on the well-being of their sons, B.M. age 10 and C.M. age 7. Their employment permits each of them to primarily work from home to help care for their sons. Mr. Mackie's parents live near Houston, Texas. He has one brother and one sister, both of whom live in south Texas.

Mr. Mackie's eldest son, B.M., is a type 1 diabetic. Ongoing issues treating this condition make childhood different for his son than it is for most kids. Treatment of the condition is lifechanging for siblings and parents too. While both boys began their education in public schools, the school was ill-equipped to monitor constant blood sugar testing required for B.M. to

4

be safe. Because of this both boys transitioned to home schooling.

To properly track their son's glucose levels, tests must be administered by an adult multiple times each day. Either Mr. Mackie or Jamie wakes several times each night to attend to B.M.'s blood sugar monitoring. Sleepovers at friends' homes are impossible due to these monitoring requirements and bladder control issues associated with the disease. Play dates require either Mr. Mackie or his wife to attend because very quickly low blood sugar can result in disorientation, dizzy spells, and situations where B.M. may not be able to speak for himself despite being knowledgeable about his own condition. In addition, B.M. uses an insulin pump. The pump which must be replaced every three days and the blood sugar monitor every ten days. All of which helps monitor blood sugar levels appropriately but require parenting skills, time, and attention over and above the care for a typical 10-year-old boy.

Jamie Mackie is a stay at home mom with an administrative assistant background. Mr. Mackie is self-employed and operates Patriot Filter Service, a Texas company he runs after selling a successful business of the same type in Denver, Colorado in 2022. His job flexibility lets him be at home as needed to help Jamie and the boys. Mr. Mackie also tends to several small farm animals to provide additional food for the family.

*The Applicable Statutory Range*

Disorderly Conduct in a Capitol Building or Grounds, in violation of 40 U.S.C. §5104(e)(2)(D), and Parading, Demonstrating or Picketing in a Capitol Building, in violation of 40 U.S.C. §5104(d)(2)(G), each carry terms of imprisonment of up to six months, and/or a fine of up to $5,000.00. Each count of conviction are class B misdemeanors, or "petty offenses" as defined by 18 U.S.C. §§19 and 3559(a)(7). The United States Sentencing Guidelines (Guidelines)

do not apply to class B misdemeanors. *See* U.S.S.G. §1B1.9. Additionally, pursuant to 18 U.S.C.§3583(b)(3), no term of supervised release is permitted when a sentencing court imposes a term of imprisonment for a petty offense. A sentence of as many as five years probation is permitted by statue.

Because the Guidelines do not apply, the Court is guided only by 18 U.S.C. §3553(a) to "impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." Those factors listed in §3553(a)(1) include both the nature and circumstances of the offense and the history and characteristics of the defendant described above. Additionally, the Court should examine the "need" for the sentence, by looking if and how incarceration would "reflect the seriousness of the offense, promote respect for the law, and provide just punishment." *Id*. at (2)(A). The Court must determine how its sentence would "afford adequate deterrence… protect the public… and provide correctional treatment in the most effective manner." *Id*. at 2(B-D). Finally, the Court must be mindful of the "kinds of sentences that are available," "avoid unwarranted sentence disparities," and consider the "need to provide restitution." *Id*. at (3), (6), and (7).

### *The Need for the Sentence Imposed*

Mr. Mackie performed well while on pretrial release. This, along with a lack of criminal history is indicative of his respect for the law. He has been steadily employed and has dutifully gone to all meetings with counsel, U.S. Probation, and the U.S. Attorney. During his introduction to counsel, and in preparation for the direction of this litigation, Mr. Mackie never once expressed any desire to put the government to burden on the issue. Instead, his sole concern was that his actions on January 6 would not adversely affect his family or more importantly his two sons.

If the Court imposed a sentence of probation, the ends of justice would be addressed without risk of Mr. Mackie's support for his family being interrupted. He has accepted responsibility for his actions and has a lifetime of good conduct to indicate little risk of further crimes while on supervision. Mr. Mackie is not in any need of educational or correctional treatment. Counsel submits that any sentence of incarceration, when probation is authorized by statute, will be greater than what is needed given his conduct and the extraordinary circumstances that make up January 6 cases.

### *Avoiding Unwarranted Sentence Disparities*

18 United States Code, §3553(a)(6) does not proscribe all disparities, only unwarranted ones. Mr. Mackie's employment, support for his family, lack of prior criminal conduct, together with his good conduct while on pretrial release are each a basis for this Court to impose a probationary sentence. These are factors that are indicative of his respect for the law and are not present in every case before this Court. There should be no concern about unwarranted disparity if a probationary sentence is imposed. Further, with a probationary sentence, the Court retains full jurisdiction for both supervision in the community and a potential re-sentencing of Mr. Mackie if his conduct while under supervision should fall below the Court's expectations.

### *Providing for Restitution*

Mr. Mackie stands ready to pay restitution pursuant to the plea agreement. He does ask that the Court permit a schedule of payments of restitution to occur during the proposed term of probation so as to not adversely affect the family finances.

## **CONCLUSION**

The American system of justice, administered by the United States Courts, as directed by

18 U.S.C. §3553(a) looks at every defendant, every offense, and every defendant's actions individually to arrive at a sentence that is sufficient but not greater than what is necessary for the circumstances. *See Kimbrough v. United States*, 522 U.S. 85, 90 (2007); *Gall v. United States*, 552 U.S. 38 (2007). Mr. Mackie did not organize or incite the riot that occurred on January 6, 2020. He did not participate in the forceful breaching of the outer barricades or fencing on the Capitol grounds. He came to Washinton D.C. with his brother and a hunting buddy. They were not part of any militant group as is illustrated by his social media. He did not dress for combat or assault, nor did he bring any weapons, flagpoles, signs, or bullhorns. Mr. Mackie did not touch, much less damage any property while inside the building. He, at no time, assaulted or threatened law enforcement or Capitol staffers, nor was he in an area where such assaults were occurring.

Mr. Mackie's offense conduct that day consisted of unlawfully assembling at the U.S. Capitol grounds, foolishly climbing through an already breached Senate Wing hallway window, only to take a few steps within fifteen feet of the doorway which he then immediately exited. Mr. Mackie understands and accepts there must be some punishment for this conduct, but it must be weighed against his lack of criminal history, his personal circumstances, and his individual actions on that day. Considering these and other §3553(a) sentencing factors, a one year term of probation, restitution in the amount of $500.00, and 30 hours of community service is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

        Respectfully submitted,

        *s/ Jeffrey M. Byers*
        Jeffrey M. Byers
        Federal Public Defender
        Oklahoma Bar #17499
        215 Dean A. McGee Ave., Suite 109

                                          Oklahoma City, Oklahoma 73102
                                        Voice (405)609-5930
                                        Fax     (405) 609-5932
                                        Email jeff_byers@fd.org

## **CERTIFICATE OF SERVICE**

      I certify that on December 2, 2024, I electronically sent the attached document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic filing to the following ECF registrants: Rachel Freeh, Assistant United States Attorney.

                                      *s/ Jeffrey M. Byers*
                                      JEFFREY M. BYERS