**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No. 1:24-cr-000124 (ACR)** |
| **v.** | : | |
| | : | |
| **NATHAN MACKIE,** | : | |
| **BRANDON MACKIE, and** | : | |
| **DANIEL HATCHER** | : | |
| | : | |
| **Defendants.** | : | |

**GOVERNMENT'S JOINT SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this joint sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence each defendant to 14 days' incarceration on Count Three and 36 months' probation on Count Four. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreements in this case, $500 in restitution for each defendant.

I.      **Introduction**

Daniel Hatcher, Brandon Mackie, and Nathan Mackie (collectively, "Defendants") participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The

The Defendants each pleaded guilty to violations of 40 U.S.C. § 5104(e)(2)(D) (disorderly or disruptive conduct on the grounds or in the buildings of the United States Capitol) and 40 U.S.C. § 5104(e)(2)(G) (parading, demonstrating, or picketing in any Capitol building). The government's recommendation, including a period of incarceration, is supported by: (1) the fact that Hatcher climbed a wall to leading to the Northwest Terrace of the Capitol building, and Brandon Mackie and Nathan Mackie watched as he climbed that wall, yet continued towards the building; (2) all three Defendants entered the building through a broken window as alarms sounded and as other rioters entered and exited the building through broken windows; (3) Nathan and Brandon Mackie did not take responsibility for their actions until recently; (4) text messages show that the Defendants were aware of the possibility of violence prior to January 6 but attended the events anyway; and (5) the Defendants encountered teargas and multiple officers throughout the day on January 6 but nonetheless continued into the Capitol building.

The Court must also consider that Defendants' conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for their actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of the Defendants' crimes support a sentence of 14 days' incarceration and 36 months' probation.

---

Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

## II.    Factual and Procedural Background

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF Nos. 36 through 38 (statements of offenses).

*Defendants' Roles in the January 6, 2021 Attack on the Capitol*

On January 5, 2021, Hatcher traveled to Washington, D.C. from Arkansas, where he resides. Brandon Mackie and Nathan Mackie traveled from Texas, where they reside. The men coordinated their travel and stayed in an AirBnb together on the night of January 5, 2021, along with a fourth individual. [2]

The Defendants' text messages show that they were aware that the events of January 6, 2021 might turn violent before they arrived in Washington, D.C., and that at least Hatcher and Nathan Mackie were excited by that prospect. For example:

- On January 3, 2021, Hatcher texted a friend: "Going to join the Proud Boys and beat some a$$." He then said, "Not really. Too old for that. But I do plan to watch and cheer them on 😊."

- On January 4, 2021, Brandon Mackie texted Hatcher, advising him to wear clothing demonstrating which "side" he was on. He said: "you'll want some sort of clothing to show you're on the Proud Boys side if we go down there with them. I learned you don't want to look anonymous. They weren't all necessarily wearing MAGA stuff, but something that shows you're not a soy boy. I'll be wearing my 1776 shirt. Proud Boys attire is black and yellow, but not sure if it's ok to wear that if you're not actually a member…"

- On January 5, 2021, Hatcher texted Brandon Mackie, stating: "I am bringing a steel carabiner (attached to my backpack) that fits like brass knuckles in my hand for defense (Or offense!) 😊"

- On January 5, 2021, Nathan Mackie texted Hatcher: "Ready to kick the shit out of Fanny pack wearers"

---

[2] Brandon Mackie identified this fourth individual to investigators. He has not been charged.

- On January 5, 2021, Nathan Mackie texted Hatcher: "I can only confirm a few people on my flight are on our side. We are fixing to take off. I will see y'all on the dark side."

- On January 8, 2021, Hatcher texted: "We are even MORE famous than I thought. WSJ famous!" Brandon Mackie "liked" the message, and texted back, "Lol. I had like 15 people surrounding me at the gate wanting to see pics. I wouldn't text them so I was showing them on my phone. Same thing…they were excited to talk with someone that actually did it."

The Defendants gathered at their AirBnb on the evening of January 5, 2021. On the morning of January 6, the Defendants went to then-President Trump's rally at the Ellipse and listened to his speech. The Defendants then went to the Capitol building, approaching the building and entering the restricted perimeter around it from the West side.

As they approached the building, Hatcher attempted to climb the Northwest wall of the Capitol building to reach the Upper West Terrace, as shown below.[3]



*Image 1: Hatcher Scaling a Capitol Building Wall*

---

[3] In all images throughout this memorandum, Daniel Hatcher is circled in red, Brandon Mackie is circled in green, and Nathan Mackie is circled in yellow.

Hatcher climbed down the wall before reaching the top. The Defendants then walked to the Northwest Steps of the Capitol building, crossing the Northwest lawn, where a large number of rioters had gathered. They stood on a ledge near the base of those steps as the crowd around them became increasingly agitated. Brandon Mackie, circled in green below, clapped his hands together to cheer on the crowd. Sentencing Exhibit 1 at 00:16.



*Image 2: Still Screenshot from Sentencing Exhibit 1 at 00:16 Showing Brandon Mackie Clapping his Hands to Cheer on the Crowd*

Upon reaching the top of the steps, the Defendants remained on the Upper West Terrace of the Capitol building for at least thirty minutes. Image 3, below, shows the three men standing in that area.



*Image 3: Defendants on the Upper Northwest Terrace of the Capitol Building*

The Defendants entered the Capitol building through a broken window near the Senate Wing Door at approximately 3:12 p.m. Image 4, below, shows Brandon Mackie posing as he entered the building:



*Image 4: Brandon Mackie Smiling as he Entered the Capitol Building Through a Broken Window*

Alarms sounded as rioters entered and exited the Senate Wing Door and adjacent windows. *See* Sentencing Exhibit 2 (showing Nathan Mackie and Brandon Mackie at approximately 00:03). Immediately after entering the building, Brandon Mackie took a photograph of Hatcher smiling in front of a line of police officers, who were fully dressed in tactical gear and attempting to contain the mob of people:



*Image 5: Hatcher Posing in Front of Police Officers in the Capitol Building*

The Defendants exited the building through the Senate Wing Door, adjacent to the window through which they entered, at approximately 3:14 p.m.

Either before or after entering the building, Hatcher again posed in front of officers stationed on the Upper Northwest Terrace:



*Image 6: Hatcher Posing in Front of Police Officers Near the Capitol Building*

Images of Hatcher and other rioters scaling the Capitol building's walls, including Image 1, above, circulated in the media following the events of January 6. After leaving the Capitol grounds on that day, Hatcher texted several pictures of himself climbing the wall leading to the Northwest Terrace of the building to friends and family members. Hatcher texted a family member on the evening of January 6: "I am back at apt. What a day! We were some of the first that stormed the Capitol building! HISTORIC!!! I was actually inside. Got pics to share later. Only tear gassed slightly."

The Defendants also continued to discuss the events of January 6 after that day. For example, on January 8, 2021, Hatcher texted Brandon Mackie stating, "We are famous dude! (At least in Trump circles!)" The next day, on January 9, 2021, Hatcher sent a text to an unknown person stating "We are rock stars. We'd [sic] should go down as the new July 4th."

*Interviews of the Defendants*

FBI agents interviewed Hatcher on January 13 and 19, 2021. Additionally, pursuant to Defendants' plea agreements, the government interviewed Daniel Hatcher, Nathan Mackie, and Brandon Mackie on August 30, 2024, October 9, 2024, and October 31, 2024, respectively.

During the January 2021 interviews with the FBI agents, Hatcher recounted the events of January 6, admitted that he went inside the Capitol building, and identified himself in images. He told agents that police had used teargas and that the doors the Capitol had been broken by individuals at the building, but that the majority of the individuals present at the Capitol that day were "peaceful." During his August 2024 interview, Hatcher recounted his actions on January 6, but expressed limited remorse for the events. For instance, Hatcher insisted that the individuals who committed acts of violence at the Capitol on the day were likely members of Antifa or the

FBI. When asked if there was anything that he would have changed about the events of January 6, Hatcher stated that he wished that former Vice President Pence had "done his job" on that day.

Nathan Mackie also recounted the events of January 6 during his October 2024 interview. He maintained that he believed, at the time, that he was allowed to enter the Capitol building. He expressed that he wished that he not gone to the Capitol building on January 6. That said, Nathan Mackie stated that January 6 was the worst thing to ever happen "to him" and that the events of that day turned his life "upside down," but did not express a greater understanding or acknowledgement of why or how his specific actions were problematic.

Brandon Mackie similarly recounted his involvement in the events of January 6, 2021. Brandon Mackie insisted that he did not see any violence at any point on January 6, but admitted that pepper spray lingered in the air as they approached the building, and he did see some individuals breaking windows. Brandon Mackie also stated that he entered the Capitol building because so many other people were doing so and that he did not hear alarms when he entered. Mackie was asked about the text message cite on page 3 in which Hatcher told Mackie that he would bring a "steel carabiner…that fits like brass knuckles for defense (or offense!)." Mackie stated that he did not remember the message. He further stated he regrets his decision to enter the Capitol and his involvement in the events of January 6.

*The Charges and Plea Agreements*

On March 11, 2024, the United States charged Daniel Hatcher, Brandon Mackie, and Nathan Mackie by a four-count Information with violations of 18 U.S.C. § 1752(a)(1), 18 U.S.C. § 1752(a)(2), 40 U.S.C. § 5104(e)(2)(D), and 40 U.S.C. § 5104(e)(2)(G). On June 28, 2024, pursuant to plea agreements entered into with the government, Daniel Hatcher, Brandon Mackie, and Nathan Mackie each pleaded guilty to Counts 3 and 4 of the Information, charging them each

with violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G). By plea agreement, the Defendants agreed to pay $500 in restitution to the Architect of the Capitol.

### III.    Statutory Penalties

Hatcher, Brandon Mackie, and Nathan Mackie now face sentencing for violating 40 U.S.C. §§ 5104(e)(2)(D) and (G). As noted by the plea agreements and the U.S. Probation Office, on each count the Defendants each face up to six months of imprisonment and a fine of up to $5,000. The Defendants must also pay restitution under the terms of their plea agreements. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008). As these offenses are Class B Misdemeanors, the Sentencing Guidelines do not apply to them. 18 U.S.C. § 3559; U.S.S.G. §1B1.9.

### IV.    Sentencing Factors Under 18 U.S.C. § 3553(a)

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of a sentence of 14 days' incarceration and 36 months' probation for each of the Defendants.

#### A.  The Nature and Circumstances of the Offense

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing the Defendants' participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for misdemeanor defendants like Hatcher,

Brandon Mackie, and Nathan Mackie, the absence of violent or destructive acts is not a mitigating factor. Had the Defendants engaged in such conduct, they would have faced additional criminal charges.

Although the Defendants did not engage in violent or destructive behavior on January 6, they had ample opportunity that day to recognize the wrongfulness of their actions and correct course. The Defendants remained on restricted Capitol grounds for over thirty minutes before entering the building. During that time, Hatcher attempted to scale a wall of the United States Capitol building. Brandon Mackie and Nathan Mackie saw this happen, but nonetheless continued onwards to the Upper Northwest Terrace of the Capitol and into the Capitol building itself. Hatcher also admitted to the FBI that the Defendants saw teargas used by officers, and Brandon Mackie cheered on other rioters in his vicinity as the ground became increasingly aggravated and destructive. Further, the Defendants entered the Capitol building through a broken window as alarms blared in the background. Immediately after they entered the Capitol building, the Defendants saw a line of uniformed officers to their left, at which point Brandon Mackie took a photograph of Hatcher posing in front of those officers. All of these factors are aggravating and establish the need for incarceration in this case.

That said, the limited amount of time the Defendants spent in the Capitol—approximately two minutes—is a mitigating factor. The Defendants did not enter areas of the Capitol building beyond the area in the immediate vicinity of the Senate Wing Door, although a line police officers blocked them from doing so.

### B.  The Defendants' History and Characteristics

According to the Presentence Investigation Reports, ECF Nos. 39 through 41, the Defendants all have stable family lives and maintain stable jobs. Nathan Mackie and Brandon

Mackie both completed high school, and Daniel Hatcher has a bachelor's degree. The government considers these factors both aggravating and mitigating: given the Defendants' levels of education and stable family backgrounds, they should have known better than engage in a riot and enter the Capitol building on January 6. On the other hand, these factors may make it less likely that the Defendants will reoffend, especially given that none of the Defendants have any known criminal history.

### C.  The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot.  *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D.  The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be

deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider. This was not a protest but a violent siege of the Capitol. *See United States v. Paul Hodgkins*, 21-cr-188-RDM, Tr. at 46 ("I don't think that any plausible argument can be made defending what happened in the Capitol on January 6th as the exercise of First Amendment rights"). And it is important to convey to future potential rioters—especially those who intend to improperly influence the democratic process—that their actions will have consequences.

*Specific Deterrence*

The need for the sentence to provide specific deterrence to these defendants weighs in favor of brief terms of incarceration.

All three Defendants have accepted responsibility by stipulating to all of the facts in the Statements of Offense, ECF Nos. 36 through 38. That said, Nathan Mackie's and Brandon Mackie's expressions of remorse came at the last minute, and only when their sentencing hearings loomed. The Court should therefore view these expressions of remorse, as well as any remorse Nathan Mackie and Brandon Mackie expresses at sentencing, with skepticism. *See United States v. Matthew Mazzocco*, 1:21-cr-00054 (TSC), Tr. 10/4/2021 at 29-30 ("[The defendant's] remorse didn't come when he left that Capitol. It didn't come when he went home. It came when he realized he was in trouble. It came when he realized that large numbers of Americans and people worldwide were horrified at what happened that day. It came when he realized that he could go to jail for what

he did. And that is when he felt remorse, and that is when he took responsibility for his actions.")
(statement of Judge Chutkan).

After January 6, Daniel Hatcher agreed to two interviews with the FBI, during which he truthfully recounted the events of January 6 and identified himself in images for investigators. He further told investigators that he would not have attended the events of January 6 if he knew that they would turn violent. The government considers Hatcher's cooperation immediately after the events of January 6 to be mitigating. On the other hand, Hatcher's text messages, *see* pages 3-4, show that he had some expectation, and even excited anticipation, before January 6 that the event would turn violent. His statement that he would not have attended the events of January 6 if he had known they would turn violent should thus be viewed with skepticism.

Hatcher maintains beliefs that some of the events of January 6 were orchestrated by government actors and/or members of Antifa. Nathan Mackie and Brandon Mackie both made statements to investigators that the government views with skepticism. For instance, Nathan Mackie stated he believed he was allowed in the building and Brandon Mackie stated that he did not see any violence on January 6 or hear the alarms as he entered the building. The Court must sentence the Defendants in this case in a manner sufficient to deter them specifically, and others generally, from going down that road again.

### E.  The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[4] This Court must sentence the Defendants based on their

---

[4] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL

own conduct and relevant characteristics, but should give substantial weight to the context of their unlawful conduct, i.e. their participation in the January 6 riot.

The Defendants have each pleaded guilty to Counts 3 and 4 of the Information, charging them with violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G). These offenses are Class B misdemeanors. 18 U.S.C. § 3559. Certain Class B and C misdemeanors and infractions are "petty offenses," 18 U.S.C. § 19, to which the Sentencing Guidelines do not apply, U.S.S.G. § 1B1.9. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Cases involving convictions only for Class B misdemeanors (petty offenses) are not subject to the Sentencing Guidelines, so the Section 3553(a) factors take on greater prominence in those cases. Sentencing judges and parties have tended to rely on other Capitol siege petty offense cases as the closest "comparators" when assessing unwarranted disparity. But nothing in Section 3553(a)(6) requires a court to mechanically conform a sentence to those imposed in previous cases, even those involving similar criminal conduct and defendant's records. After all, the goal of minimizing unwarranted sentencing disparities in Section 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012); *see United States v. Stotts*, D.D.C. 21-cr-272 (TJK), Nov. 9, 2021 Sent. Hrg. Tr. at 33-34 ("I certainly have studied closely, to say the least, the sentencings that have been handed out by my colleagues. And as your attorney has pointed out, you know, maybe, perhaps not surprisingly,

---

BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

judges have taken different approaches to folks that are roughly in your shoes") (statement of Judge Kelly).

Additionally, logic dictates that whether a sentence creates a disparity that is unwarranted is largely a function of the degree of the disparity. Differences in sentences measured in a few months are less likely to cause an unwarranted disparity than differences measured in years. *See United States v. Servisto*, D.D.C. 21-cr-320 (ABJ), Dec. 15, 2021 Sent. Hrg. Tr.  at 23-24 ("The government is trying to ensure that the sentences reflect where the defendant falls on the spectrum of individuals arrested in connection with this offense. And that's largely been accomplished already by offering a misdemeanor plea, which reduces your exposure substantially.") (statement of Judge Berman Jackson).

While no previously sentenced case contains the exact same balance of aggravating and mitigating factors present here, this Court and multiple other judges of this court have sentenced defendants who have pleaded guilty to the same charges that the Defendants pleaded to here, and under similar circumstances.

In *United States v. Chad Suenram*, 23-cr-290 (ACR), the defendant entered the Capitol first through the Senate Fire Door, where he cheered as he entered.  Suenram exited the building and entered a second time through the Senate Wing Door.  Near the North Door, he was at the front of a line of rioters confronting officers and cheered when police retreated inside the building. Suenram was consistently less than candid when interviewed by FBI agents and declined to acknowledge basic facts captured in videos. After repeatedly balking to enter a guilty plea he had agreed to enter, he pleaded guilty to violating 18 U.S.C. § 1751(a)(1). This Court imposed 14 days of intermittent confinement, even though Suenram is the sole parent of five children, including a child with severe behavioral issues from the foster system.

In *United States v. Mark Nealy*, 23-cr-278-TSC, the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(G). Nealy entered the Capitol building shortly after the breaches on the Upper West Terrace. Nealy walked around the interior of the Capitol building and was in the Capitol building for approximately thirteen minutes, a longer time than the Defendants here spent in the Capitol.  However, Nealy did not climb a wall, like Hatcher, and remained on restricted Capitol grounds for a shorter amount of time that Hatcher, Brandon Mackie, and Nathan Mackie. Judge Chutkan sentenced Nealy to 14 days' incarceration.

In *United States v. Christopher Keniley*, 24-cr-001-TSC, the defendant pleaded guilty to violating 40 U.S.C. § 5104(e)(2)(D) and 40 U.S.C. § 5104(e)(20(G). Keniley entered the building through the Senate Wing Door, where the Defendants entered through a broken window next to that door. Inside, Keniley interacted with police officers. The Defendants here likewise saw police officers, and Hatcher posed for a picture in front of a line of officers. Judge Chutkan sentenced Keniley to 10 days' incarceration and 12 months' probation.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an

appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## V.    Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[5] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that the Defendants must each pay $500 in restitution, which reflects in part the role that the Defendants played in the riot on January 6.[6] PSR ¶ 78. As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05"

---

[5] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C.  § 3663A(c)(1).

[6] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

in damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) Defendants' restitution payments must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities. *See* PSR ¶ 95.

## VI.    Fine

The Defendants convictions for violations of 40 U.S.C. §§ 5104(e)(2)(D) and (G) subject them to statutory maximum fines of $5,000.00. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1).  Here, Probation concluded, based on the Defendants' reported financial information, that all three Defendants have the ability to pay a fine up to the statutory maximum. Brandon Mackie PSR ¶ 61; Hatcher PSR ¶ 62; Nathan Mackie PSR ¶ 64.

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, the Defendants have not shown an inability to pay, and thus the Court has the authority to impose fines.

## VII.    Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence each of the Defendants to 14 days' incarceration on Count Three, 36 months' probation on Count Four, 60 hours of community

service, and, consistent with the plea agreements in this case, $500 in restitution. Such a sentence

protects the community, promotes respect for the law, and deters future crime by imposing

restrictions on Defendants' liberty as a consequence of their behavior.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Rachel Freeh*
        RACHEL FREEH
        Assistant United States Attorney
        District of Columbia Bar No. 1736082
        601 D Street NW
        Washington, D.C. 20530
        (202) 252-7749
        Rachel.freeh@usdoj.gov